# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

RICHARD GREENWELL,                )
                                  )
        Plaintiff,           )
                                  )
vs.                               )    NO. CIV-10-0313-HE
                                  )
THE CHARLES MACHINE WORKS         )
INC. d/b/a DITCH WITCH            )
                                  )
        Defendant.           )

## ORDER

Plaintiff Richard Greenwell filed suit against his former employer, The Charles Machine Works Inc. d/b/a Ditch Witch ("CMW" or "defendant"), asserting it wrongfully discriminated and retaliated against him in violation of the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), the Age Discrimination in Employment Act ("ADEA"), the Worker's Compensation Act, and Oklahoma public policy.[1] He has since abandoned his claim under the Worker's Compensation Act. CMW has moved for summary judgment, contending the plaintiff was neither discriminated nor retaliated against but was instead terminated for poor performance, reckless behavior, and unexcused absences.

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Viewing the evidence and any reasonable inferences that might be

---

[1] *The Oklahoma Supreme Court recognized a cause of action for wrongful discharge in violation of public policy in* <u>Burk v. K-Mart Corp.</u>, *770 P.2d 24 (1989).*

drawn in the light most favorable to the plaintiff, the nonmoving party, Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d 1160, 1167 (10th Cir. 2007), the court concludes the motion should be granted in part and denied in part.

**BACKGROUND**

Except as indicated, the following facts are substantially undisputed. Plaintiff was hired by CMW around April 1989 and worked as a test engineer for a majority of his career there until his termination on April 24, 2009. He was 49 years old at the time of his termination. His job had included coordinating test plans, evaluating test data, and supervising technicians on test setups, all of which required strong analytical and organizational skills and an ability to communicate with fellow co-workers. Each year, plaintiff received performance reviews for his work from his immediate supervisor, Randy Hughey, who is ten years his senior. His reviews generally indicated that he was meeting expectations but also identified areas where he needed improvement.[2]

In the last few years of his employment, plaintiff had a number of incidents causing injuries to his back. In 2006, there were two separate instances where he injured his back while engaged in activities outside the workplace—one instance stemming from lifting a 240-pound pig and the other stemming from lifting a toilet while doing plumbing work. In December 2007, plaintiff missed a day of work after he suffered an on-the-job back injury

---

[2]*While the evaluations indicate plaintiff's performance level rating increased from 41 in 2006 to 44 in 2007, it decreased to 35 in 2008 and to 29 in 2009. [Doc. #39, Ex. C-F]. These evaluations also provided comments on things plaintiff did well and things he needed to work on.*

2

while operating a backhoe. He also missed a day in July 2008 after injuring his back lifting an air conditioning unit while off duty.

Plaintiff subsequently underwent two back surgeries—one on August 23, 2008, for a partial disc removal and one on December 8, 2008, for a disc fusion and placement of six screws to secure his lumbar curvature. Plaintiff returned to work around September 22, 2008 and January 9, 2009, approximately four weeks after each respective surgery and worked half-days for approximately two to three weeks thereafter. He would then return to full-time work. Even though plaintiff missed these days, he, as a salaried employee, was fully compensated for the time he was absent.

Plaintiff's treating physician, Dr. Pollard, kept track of plaintiff's post-surgery recovery and specifically indicated certain limitations, or lack thereof, that plaintiff had. After each surgery, Dr. Pollard requested that plaintiff have a 15-pound lifting restriction, of which Hughey was aware.

Around the first of February 2009, plaintiff returned to full-time work at CMW. Plaintiff missed one to two days after returning in February due to back pain. The defendant, however, did not maintain written records of absences for salaried employees, and it is disputed whether plaintiff missed more than that. While plaintiff's supervisor Hughey did not express any problem with plaintiff's leave of absence at the time of plaintiff's first surgery, there is a dispute as to whether he eventually took issue with plaintiff's subsequent absences.

On March 17, 2009, plaintiff was involved in a fight at a local bar, resulting in him

missing work the next day.³ Plaintiff offers evidence that, while he was in Hughey's office two days later, Hughey expressed his dissatisfaction with plaintiff, that he was "tired of carrying plaintiff's bags," and that he was going to fire plaintiff.⁴ Plaintiff's termination, however, was not final until April 24, 2009, to give plaintiff access to the same severance package defendant was offering to other employees being discharged due to a reduction in force ("RIF").⁵ After plaintiff's termination, a majority of his duties were assumed by Daryl Williams, who has worked as a test engineer for CMW since December 1994.

Defendant's stated reasons for firing plaintiff included his "lack of attention to detail and planning," "poor attitude toward work and coworkers," his inability to consistently stay on task, and attendance issues. Employee Separation Card [Doc. #39-14]. Plaintiff contends, however, that defendant fired him not because of the stated reasons, but because of his back problems, the absences resulting from his back problems, and his age. After filing his complaint with the EEOC and receiving his right-to-sue letter, plaintiff timely filed suit in this court.

---

³*There is a dispute as to whether he also missed a second day.*

⁴*While Hughey was plaintiff's direct supervisor, there is a dispute as to whether he or David Lamerton, defendant's HR director, made the final decision to fire plaintiff.*

⁵ *Defendant's proposed Facts. Nos. 27 & 28 state that, between March 2009 and May 2009, defendant reduced its workforce due to a downturn in the economy, that it offered a severance package to departing employees, and that it delayed plaintiff's termination until April 24, 2009, after the package terms had been finalized, to make the same package available to him. Plaintiff's objection to those facts—that he was not part of the RIF—misses the point. Defendant does not assert he was part of the RIF, but rather that his departure was timed so as to make the severance package designed for employees let go under the RIF available to him.*

4

## DISCUSSION

Because plaintiff lacks direct evidence of disability discrimination, retaliation, and/or interference under the ADA, the FMLA, or the ADEA, "these claims are properly analyzed under the burden-shifting framework described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)." Nealey v. Water District No. 1 of Johnson County, 324 Fed. Appx. 744, 748 (10th Cir. 2009) (noting the framework applies to ADA, FMLA, and ADEA claims). Plaintiff must establish a prima facie case for each of his claims, and if he does, the burden shifts to defendant to articulate some legitimate, nondiscriminatory reason for its actions. Rivera v. City & County of Denver, 365 F.3d 912, 920 (10th Cir. 2004). If defendant does so, plaintiff must then produce evidence that the reasons offered are merely pretextual. Id. To establish pretext, plaintiff may present evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Proctor v. United Parcel Serv., 502 F.3d 1200, 1209 (10th Cir. 2007) (internal quotation and citation omitted).

## PLAINTIFF'S ADA CLAIMS

Plaintiff alleges he was discriminated against based on his disability in violation of the ADA. To make out a prima facie case of ADA discrimination, plaintiff must show a material issue of fact as to these elements: (1) that he is disabled as defined by the ADA, (2)

5

that he is qualified, with or without reasonable accommodation, for the job he possessed, and (3) that CMW discriminated against him because of his disability. Johnson v. Weld County, Colo., 594 F.3d 1202, 1217 (10th Cir. 2010).

To qualify as disabled under the ADA, an individual must either (a) have a physical or mental impairment that substantially limits one or more major life activities of such individual, (b) have a record of such an impairment, or (c) be regarded as having such an impairment. 42 U.S.C. § 12102(1).

While plaintiff's evidence of disability at the pertinent time is thin, the court concludes he has presented enough evidence to create a material issue as to whether he was disabled. There is evidence that, at the time of termination and as a result of his back problems, he had trouble lifting, walking, twisting, bending, and sleeping. Further, the evidence could support a permissible inference that the referenced impairments "substantially limited" a major life activity. "Ascertaining whether the impairment substantially limits the major life activity is a question of fact for the jury, although a court is not precluded from deciding the issue on a motion for summary judgment." Berry v. T-Mobile USA, Inc., 490 F.3d 1211, 1216 (10th Cir. 2007) (quoting Holt v. Grand Lake Mental Health Ctr., Inc., 443 F.3d 762, 765 (10th Cir. 2006)) (internal quotations omitted).

There is some evidence to satisfy the second element of the prima facie case and, as to the third element, there is also some evidence from which a factfinder might conceivably find discrimination based on his disability. While the question is close, the court concludes

the evidence of temporal proximity between his return to full-time work and his termination (approximately six weeks), plus the evidence of dissatisfaction with his absences by his supervisors, and other evidence is sufficient, when considered collectively, to create a material issue of fact as to this element. A sufficient showing has been made as to plaintiff's prima facie case.

Defendant has articulated a legitimate, non-discriminatory reason for plaintiff's discharge, grounded in his performance and attendance issues, so the question becomes whether there is evidence of pretext. While plaintiff's evidence as to pretext is thin, the court concludes it is sufficient to create a jury question. Defendant arguably gave different reasons at different times as to its reasons for terminating plaintiff, including potential differences in its reliance and nonreliance on the bar fight as a reason. There is, as noted above, some evidence of supervisor frustration with defendant's absences near the time of his surgeries and recoveries from them, plus the statement as to "carrying your bags" at the time of termination. This evidence, coupled with the temporal proximity of the pertinent events, is sufficient to show a question as to pretext.

Defendant's motion will be denied as to the ADA claim.

## PLAINTIFF'S FMLA CLAIMS

Plaintiff also alleges interference and retaliation claims under the FMLA. The FMLA generally guarantees eligible employees up to 12 weeks of unpaid leave for serious health

7

conditions[6] and reinstatement to their former, or an equivalent, position upon return from that leave. 29 U.S.C. §§ 2612(a)(1), 2614(a). It is unlawful for a covered employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). However, "Section 2615(a)(1) is [ ] not a strict liability statute." Metzler v. Federal Home Loan Bank of Topeka, 464 F.3d 1164, 1180 (10th Cir. 2006) (citing 29 U.S.C. §2614(a)(3)(B)).

> Under FMLA, an employee who requests leave or is on leave has no greater rights than an employee who remains at work. For this reason, an employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request.

Gunnell v. Utah Valley State College, 152 F.3d 1253, 1262 (10th Cir. 1998) (citations omitted). Thus, "an employee may be dismissed, preventing her from exercising her statutory right to FMLA leave—but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.2d 955, 961 (10th Cir. 2002) (citing Gunnell, 152 F.3d at 1262).

"To make out a prima facie claim for FMLA interference, [ ] plaintiff must establish (1) that [he] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with [his] right to take FMLA leave, and (3) that the employer's action was related

---

[6]*A serious health condition "means an illness, injury, impairment or physical or mental condition that involves inpatient care . . . or continuing treatment by a health care provider . . . ." 29 C.F.R. § 825.113(a). A serious health condition involving continuing treatment can be defined as a "period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves [ ] [t]reatment two or more times, within 30 days of the first day of incapacity." 29 C.F.R. § 825.115(a).*

8

to the exercise or attempted exercise of [his] FMLA rights." Jones v. Denver Public Schools, 427 F.3d 1315, 1319 (10th Cir. 2005) (citing Bones v. Honeywell International, Inc., 366 F.3d 869, 877 (10th Cir. 2004)).[7] Defendant challenges only the second element here on the basis that plaintiff never provided CMW with notice that he wished to invoke FMLA leave for his surgery-related absences.

There is no evidence that plaintiff specifically requested FMLA benefits. However, "[t]he analysis of improper notice under the FMLA is separate from the analysis of the *substantive* claim that an employer interfered with the exercise of an employee's FMLA rights." Bones, 366 F.3d at 877 n.2 (citing Smith, 298 F.3d at 960-61). The employee must, of course, assert or invoke his or her FMLA rights in some fashion. However, the FMLA "does not require a covered employee to specifically ask for FMLA benefits. An employee need not expressly assert rights under the FMLA or even mention the FMLA." Tate v. Farmland Industries, Inc., 268 F.3d 989, 997 (10th Cir. 2001). "If the employer is on notice that the employee might qualify for FMLA benefits, the employer has a duty to notify the employee that FMLA coverage may apply." Id. An employer's failure "to follow the notice requirements . . . may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.300(e).

While there is no evidence that plaintiff specifically requested FMLA benefits, there

---

[7]*While a FMLA retaliation claim is evaluated under the McDonnell Douglas framework, "the employer bears the burden of proof on the third element of an interference claim once the plaintiff has shown her FMLA leave was interfered with." Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1287 (10th Cir. 2007).*

9

is evidence from which it could be concluded that defendant was on notice of plaintiff's entitlement to FMLA leave. Plaintiff's complaints as to his condition and defendant's knowledge of the surgeries and related recovery periods were sufficient to create a material issue of fact in this regard. *See* Tate v. Farmland Indus., Inc. 268 F.3d 989, 998 (10th Cir. 2001) ("Given Plaintiff's allegation that Defendant placed him on sick leave, Plaintiff need not allege that he provided Defendant with notice of his rights under the FMLA."). If defendant was put on notice that plaintiff qualified for FMLA benefits, "the employer ha[d] a duty to notify the employee that FMLA coverage may apply." Id. at 997. Plaintiff's evidence indicates that he was not notified by defendant of his possible entitlement to such leave. Accordingly, plaintiff has presented sufficient evidence as to the second element of his interference claim to make out a prima facie case.

Plaintiff also alleges a retaliation claim under the FMLA. To establish a prima facie case for a retaliation claim, plaintiff must show that (1) he engaged in protected activity, (2) CMW took action that a reasonable employee would have found materially adverse, and (3) there exists a causal connection between protected activity and adverse action. Campbell, 478 F.3d at 1287. Defendant challenges only the last of these elements.

Though the question is close, plaintiff has presented sufficient evidence to create a material issue as to whether there is a causal connection between plaintiff's leave and his termination. The crux of the inquiry when determining a causal connection is "'whether the plaintiff has demonstrated that the [employer's] action occurred under circumstances which give rise to an inference of unlawful discrimination." Metzler v. Federal Home Loan Bank

of Topeka, 464 F.3d 1164, 1171 (10th Cir. 2006) (quoting Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1221 (10th Cir. 2002)). The Tenth Circuit has recognized that temporal proximity alone can, in a proper case, demonstrate causation if the termination and the protected activity are close enough in time. Id. *See* Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 2001) ("one and one-half month period between protected activity and adverse action may, by itself, establish causation;" "three-month period, standing alone, is insufficient to establish causation") (citations omitted). As noted above, there was approximately six weeks between the time plaintiff returned to full-time work in early February 2009 and when he was first notified of his termination in mid-March 2009.[8] Given the temporal proximity between plaintiff's leave and the notification of his termination, the court concludes plaintiff has presented evidence sufficient to create a material issue as to the third element of his prima facie retaliation claim.

Defendant has articulated legitimate, non-discriminatory reasons for plaintiff's termination. For substantially the same reasons as discussed with respect to plaintiff's ADA claim, the court concludes plaintiff has offered evidence sufficient to create a material issue as to pretext. Defendant's motion will be denied as to the FMLA claims.

## PLAINTIFF'S ADEA CLAIMS

Plaintiff also alleges discrimination under the ADEA. In order to make out a prima

---

[8]*As previously mentioned, plaintiff missed one to two days due to his back pain after returning to full-time work. Therefore, the time between plaintiff's leave and his termination was arguably less than six weeks.*

facie case for age discrimination, plaintiff must demonstrate (1) he is within the protected age group, (2) he was doing satisfactory work, (3) he was discharged, and (4) he was replaced by someone younger. Rivera v. City & County of Denver, 365 F.3d 912, 920 (10th Cir. 2004). While defendant admits that elements one and three are met and does not substantially challenge the second for present purposes, it does challenge the fourth.[9]

Here, plaintiff has failed to present evidence that plaintiff was "replaced" by someone younger. *See* Kosak v. Catholic Health Initiatives of Col., 400 Fed. Appx. 363, 366 (10th Cir. 2010) ("We have repeatedly emphasized that an ADEA plaintiff must ordinarily show that her position was filled by a younger person in order to make a prima facie case of discrimination under the McDonnell Douglas burden-shifting framework."). There is evidence, rather, that plaintiff's former job duties were assigned or shifted to Daryl Williams (and to a few other pre-existing employees) who has worked for CMW for over fifteen years. *See* Collier v. Budd Co., 66 F.3d 886, 890 n. 5 (7th Cir. 1995) ("Shifting and/or consolidating work does not constitute replacement."). Plaintiff has failed to present evidence that he was actually "replaced" by anyone.

The elements of a prima facie case are not meant to be rigid or formulaic. The purpose for them, rather, is "the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor." Adamson v. Multi

---

*[9]Defendant challenged the last element of plaintiff's ADEA discrimination claim in its reply to its motion for summary judgment. [Doc. #45, p.9]. The court may appropriately address it since plaintiff was given the opportunity to respond. Plaintiff's Surreply [Doc. #50].*

Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1146 (10th Cir. 2008). If there is no evidence tending to establish this initial inference, plaintiff is not entitled to the presumption of discrimination. Id. Here, plaintiff has not produced evidence suggesting plaintiff's age had anything to do with his termination. The only evidence directly implicating age is that Daryl Williams, the person taking over the bulk of plaintiff's duties, was younger than plaintiff. That fact alone is insufficient.

## **CONCLUSION**

For the reasons stated above, defendant CMW's motion for summary judgment [Doc. #39] is **GRANTED** as to plaintiff's ADEA discrimination claim and his worker's compensation claim. The motion is otherwise **DENIED**.

**IT IS SO ORDERED**.

Dated this 15th day of April, 2011.

JOE HEATON
UNITED STATES DISTRICT JUDGE